[Civ. No. 10756.   Third Dist.   Sept. 8, 1964.]

JOHN G. HECKES et al., Plaintiffs and Appellants, v. DAVID M. SAPP et al., Defendants and Respondents.

Downey, Brand, Seymour & Rohwer and Ronald Paul for Plaintiffs and Appellants.

Rubin, Seltzer & Solomon and Herbert J. Solomon for Defendants and Respondents.

SCHOTTKY, J.—Appellants appeal from a judgment entered against them in an action they brought against respondents as guarantors of a promissory note secured by a deed of trust on real property executed by Jonathan Manor, Inc., to appellants. The parties submitted the case to the trial court on a partial stipulation of facts. The stipulation was designated partial because attorneys' fees provided for in the promissory note were not stipulated to. Evidence was presented as to the fees of appellants' attorneys.

A summary of the evidence included in the partial stipulation of facts is as follows: Jonathan Manor, Inc., purchased real property consisting of 50 lots, from appellants in 1959 by making a sizeable down payment and executing a promissory note in the face amount of the remainder of the purchase price. The note was secured by a deed of trust covering the 50 lots sold to Jonathan Manor, Inc. Respondents signed the note as individual guarantors. At the time the promissory note and deed of trust were executed, defendants were the principal officers and directors of Jonathan Manor, Inc., and the sole shareholders of its issued and outstanding stock.

Subsequent to the purchase and after 15 lots secured by the deed of trust had been released from the lien upon payments made pursuant to the note, the holders of a senior deed of trust foreclosed and sold the remaining 35 lots by exercise of the power of sale contained therein. As a result of this sale appellants' security was rendered worthless. After Jonathan Manor, Inc., defaulted on the note, appellants instituted this action to procure a judgment against respondents for the entire unpaid balance. Respondents' sole defense was that section 580b of the Code of Civil Procedure barred a judgment against them.

Appellants contend that section 580b of the Code of Civil Procedure does not protect a guarantor against a deficiency judgment. Section 580b provides, in part, that "No deficiency judgment shall lie in any event after any sale of real property for failure of the purchaser to complete his contract of sale, or under a deed of trust, or mortgage, given to secure payment of the balance of the purchase price of real property."

"Section 580b was apparently drafted in contemplation of the standard purchase money mortgage transaction,

in which the vendor of real property retains an interest in the land sold to secure payment of part of the purchase price. Variations on the standard are subject to section 580b only if they come within the purpose of that section." (*Roseleaf Corp.* v. *Chierighino*, 59 Cal.2d 35, 41 [27 Cal.Rptr. 873, 378 P.2d 97].) Therefore, in order to determine the liability of a guarantor for a deficiency judgment, it is necessary to examine the purpose of section 580b of the Code of Civil Procedure.

In *Roseleaf Corp.* v. *Chierighino, supra,* the court reviewed the various purposes ascribed to section 580b by earlier cases and discarded them. The court then clarified the real purposes. In *Bargioni* v. *Hill,* 59 Cal.2d 121 [28 Cal.Rptr. 321, 378 P.2d 593], the court summarized the conclusions of *Roseleaf Corp.* v. *Chierighino, supra,* by stating at page 123: "The purposes are to discourage land sales that are unsound because the land is overvalued and, in the event of a depression in land values, to prevent the aggravation of the downturn that would result if defaulting purchasers lost the land and were burdened with personal liability."

The conjunctive "and" between the overvaluation and depression purposes is of critical importance. Preventing overvaluation is subsidiary to the depression purpose. "Standing alone, the first purpose, preventing overvaluation, would lead to the opposite result under the *Roseleaf* facts; would compel that an unsecured note for part of the purchase price be uncollectible under section 580b; would bar an action against a guarantor of a purchase money instrument; and would compel an inquiry into the total consideration rather than into the secured consideration. Yet the statute does none of this." (John R. Hetland, *Deficiency Judgment Limitations in California—A New Judicial Approach,* 51 Cal.L.Rev. 1, 4.) ■ The major purpose, then, of section 580b is to prevent aggravation of the downturn in depression times.

■ The purposes of section 580b as set forth in the Roseleaf and Bargioni cases dictate the conclusion that a guarantor is not shielded from a deficiency judgment by section 580b. ". . . These purposes are served by relieving the *purchaser* of personal liability to any person who finances the purchase and takes as security a trust deed or mortgage on the *property purchased,* provided the financier intended the loan to be used to pay all or part of the purchase price." (Italics added.) (*Bargioni* v. *Hill,* 59 Cal.2d 121, 123 [28 Cal.Rptr. 321, 378 P.2d 593].) ■ Consequently, the scope of protection af-

forded by section 580b must be confined to the purchaser-debtor's obligation which is secured by the purchased property. ". . . The guarantor's obligation is not within this delineation. It is not secured by the purchased security and is not the debtor's obligation." (51 Cal.L.Rev. 1, 27.)

■ Therefore, the guarantor's obligation is not a variation of the standard purchase money mortgage transaction within the purposes of section 580b, and the guarantor should not be protected against a deficiency judgment.

■ A guaranty is simply additional security for the obligor's debt. (51 Cal.L.Rev. 1, 27.) ■ Additional security in the form of property (*Freedland* v. *Greco,* 45 Cal.2d 462 [289 P.2d 463]; *Hatch* v. *Security-First Nat. Bank,* 19 Cal.2d 254 [120 P.2d 869]), or assignment of rents (*Mortgage Guar. Co.* v. *Sampsell,* 51 Cal.App.2d 180 [124 P.2d 353]), can be exhausted notwithstanding the antideficiency legislation. In order to achieve consistency, a guarantor's obligation must also be enforceable. "There seems to be no better argument in favor of protecting the guarantor than there is for protecting other property." (51 Cal.L.Rev. 1, 25.)

Liability on the part of a guarantor was implied in *Riddle* v. *Lushing,* 203 Cal.App.2d 831 [21 Cal.Rptr. 902]. In that case the defendants, as partners, executed a promissory note and deed of trust as part of the purchase price of certain real property. In their individual capacities they guaranteed the promissory note. The court there held that the defendants were protected by section 580b. The court stated at page 834: ". . . Since defendants were already primary obligors, both jointly and severally, they could not also be sureties or guarantors on the partnership note. The purported guaranty added nothing to the primary liability which arose when they as partners executed the note in the name of the partnership. As primary obligors they are entitled to the benefits and protection of said section 580b. The purported guaranty was a part of, and entirely dependent upon, the note and deed of trust, and it cannot be enforced as an independent agreement." If there had been no distinction between the protection afforded by section 580b to a guarantor and a principal, the court would not have had to hold that the defendants could not be guarantors.

■ Respondents contend that since they were the officers and directors of Jonathan Manor, Inc., and the sole shareholders at the time the promissory note and deed of trust were executed, the corporate veil should be pierced; once this

is done, respondents become guarantors and principals in their individual capacity, and under the rule in *Riddle* v. *Lushing, supra,* they are entitled to protection. This contention has no merit. █ Respondents cannot now argue that the corporate veil should be pierced because this lawsuit was neither pleaded, pretried nor tried with that doctrine in issue. (*Design Associates, Inc.* v. *Welch,* 224 Cal.App.2d 165, 171-172 [36 Cal.Rptr. 341].)

█ The partial stipulation of facts did show that respondents were the sole owners of all the outstanding stock and were the officers and directors. But even if this lawsuit had been pleaded and tried on the theory of piercing the corporate veil, this evidence would have been insufficient to allow the court to pierce the corporate veil. █ One of the requirements for piercing the corporate veil is evidence showing that "adherence to the fiction of separate existence would, under the circumstances, promote fraud or injustice." (*Stark* v. *Coker,* 20 Cal.2d 839, 846 [129 P.2d 390]; *Watson* v. *Commonwealth Ins. Co.,* 8 Cal.2d 61, 68 [63 P.2d 295].)

█ The fact that two persons own all the stock of a corporation and are the officers and directors is insufficient by itself to show fraud and injustice, allowing a court to pierce the corporate veil. (*Talbot* v. *Fresno-Pacific Corp.,* 181 Cal. App.2d 425, 432 [5 Cal.Rptr. 361]; 1 Ballantine & Sterling, Cal. Corporations Laws, § 43A, pp. 90E, 90F.)

█ Respondents also contend that section 2809 of the Civil Code, which provides that "The obligation of a surety must be neither larger in amount nor in other respects more burdensome than that of the principal . . .," proscribes a deficiency judgment against them as purchase money guarantors. The statute has no such effect. (*Bloom* v. *Bender,* 48 Cal.2d 793, 802 [313 P.2d 568]; *Everts* v. *Matteson,* 21 Cal. 2d 437 [132 P.2d 476].)

Respondents contend that the stipulation that they are guarantors also makes them accommodation makers because accommodation makers are only one type of guarantor; and that as accommodation makers they are entitled to section 580b protection. █ This contention has no merit as there is a clear distinction between guarantors and accommodation makers. (See Civ. Code, §§ 2787, 2792, 3110.)

█ Respondents finally contend that section 2847 of the Civil Code prevents a deficiency judgment against them. Section 2847 of the Civil Code provides in part: "If a surety satisfies the principal obligation, or any part thereof, whether with or without legal proceedings, the principal is bound to

reimburse what he has disbursed, including necessary costs and expenses, . . .'' Respondents argue that if a guarantor were held liable for a deficiency judgment, he could get reimbursement from the principal under the authority of section 2847; and that indirectly the principal would be held subject to a deficiency judgment. Section 2847 would not allow a guarantor to recover from the principal. ''The argument for guarantor deficiency protection does not lie in the possibility that the guarantor could enforce the obligation against the principal and thus obviate the antideficiency legislation; such a possibility does not exist. The courts consistently strike down schemes aimed at avoiding the deficiency legislation by illusory changes in form. A flimsy avoidance device based upon an intermediate surety would have no chance of success.'' (51 Cal.L.Rev. 1, 25-26.)

For the reasons hereinbefore stated and in view of the authorities hereinbefore cited, we have concluded that the court erred in decreeing that appellants were not entitled to recover from respondents the balance due on the promissory note. Appellants are, of course, entitled to recover attorneys' fees for services rendered in the trial court and upon the appeal.

The judgment is reversed with directions to the trial court to determine the amount of attorneys' fees to be awarded to plaintiffs and to enter judgment in favor of plaintiffs for the balance due on the promissory note as stated in the partial stipulation of facts and for said attorneys' fees.

Pierce, P. J., and Friedman, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied November 4, 1964.